Bissell *v.* Kellogg.

————————•　•　•————————

## BISSELL & ADAMS *vs.* KELLOGG.

60b 617
52ad274

The fact of *res adjudicata* is not to be made out by inferences. An estoppel requires strict proof. A fact cannot be held to have been adjudicated in a former suit, unless it so expressly appears by the record, or, at least, it is clearly shown by *evidence aliunde,* that it was determined.

Where there is a trial by the court, the judge who tried the cause, being required, in settling the case, to specify the facts found by him, and his conclusions of law, the facts thus specified are conclusive upon the parties, in that case, if founded on sufficient evidence; and there is no reason why they should not be considered as *res adjudicata* for all purposes, the same as though contained in the original findings of the judge.

Where it appeared by the record of a former recovery, that the question whether a certain mortgage was executed upon a usurious contract was in issue in that case, and that the fact of usury was found by the judge; *it was held,* in a subsequent action, brought by the defendant in the former suit and his privy in estate by subsequent grant, against the plaintiff in the former suit, to remove such mortgage as being a cloud upon the title, that such record was admissible in evidence, in behalf of both the plaintiffs, as against the defendant, to show, and conclusively established, that such mortgage was usurious and void.

Bissell *v*. Kellogg.

A mortgage, given for a larger sum than is due to the mortgagee, is valid for the excess only in case no rights of third persons have intervened.

As against a subsequent *bona fide* mortgagee, such a mortgage can only be a valid security for the amount due thereon at the time his rights as subsequent mortgagee accrued.

The foreclosure by advertisement of a mortgage tainted with usury will not operate to convey a good title, except to a *bona fide* purchaser at the advertised sale. And this can be prevented by giving notice of the usurious character of the mortgage, at the time of the sale.

A party cannot maintain an action to remove a cloud upon the title to land in which he has no interest, upon the sole ground that he has warranted the title. He can only be called upon, on his covenant of warranty, where there has been an eviction under valid and paramount title.

Where the usurious character of a mortgage has been determined in, and appears by, the record of a former suit, there is no necessity for a bill *quia timet*, to entertain which is discretionary with a court of equity.

This principle is applied to obligations void for usury, notwithstanding the imperative provisions of the act of 1837.

The usury act, of 1837, was not designed to require a court of equity to entertain a suit which, according to its settled practice, it would not have entertained before that act, but only to relieve a borrower, under a usurious contract, from the obligation to repay the money actually borrowed, in cases where a resort to a court of equity was *necessary* either for discovery or relief.

The former rule of courts of equity, requiring a complainant who sought relief in that court against a usurious contract, obligation or security, to repay the money actually loaned, with interest, as a condition of granting the relief, was abrogated by the statute of 1837 only in behalf of the *borrower*. The rule is not abrogated as to the *grantee* of the borrower. When such grantee, as such, commences a suit for relief, the rule requiring him to do equity, as a condition of relief, still applies.

If there is no offer by him, before suit, or in his complaint, to do equity, according to the practice of the court, the omssion to make such offer, now goes only to the question of costs. If the defendant, to secure his equitable rights, has been compelled to defend the suit, and to appeal, he is entitled to his costs.

A PPEAL, by the defendant, from a judgment rendered on the report of a referee. The facts are stated in the opinion of the court.

*J. H. Martindale*, for the appellant.

I. Conformably to the object of the complaint and prayer for judgment, the referee decided that the plaintiffs were

Bissell *v.* Kellogg.

entitled to judgment restraining the defendant from proceeding in any manner to foreclose the mortgage in question, and directing him to surrender it to the plaintiff Bissell, and to cause the same to be canceled upon the record as a cloud upon the title to the premises therein described. Judgment was entered accordingly. The referee erred. It is plain that the plaintiff Bissell has no right to the relief adjudged to him, because he is not a borrower from the defendant. At most, his only equity is to be relieved from the mortgage, if it be usurious, on payment of the actual amount loaned, with the interest. (*See cases cited below.*) Certainly it is not in the power of Adams, by joining with Bissell in the suit, to impart to him any new or additional equity. It is to be observed, that the gravamen of the complaint is, the proceedings of Kellogg to foreclose his mortgage by advertisement, and not any personal proceedings against Adams to charge him with the payment of the mortgage debt.

II. Adams has no interest in those proceedings, because he has no interest in the mortgaged premises. 1. As borrower, he had a privilege, purely personal to himself, to impugn the transaction for the alleged usury, and to demand the surrender of the mortgage. 2. But he had also the power to waive that privilege by the sale and conveyance of the mortgaged premises. Having exercised that privilege, he is not at liberty to revoke it.

III. It is not necessary, in this case, to decide the question whether Adams originally, before any judicial proceedings had been taken, might have sustained a bill in equity for the surrender and cancellation of his bond. 1. This action is not instituted for that purpose. No such relief is demanded, nor allowed in the referee's report, nor adjudged in the judgment order. 2. But Adams cannot now sustain an action in equity for the cancellation of his bond. The only grounds for such relief, at any time, were the danger of the obligor—his exposure to suit and

damages by reason of loss of evidence and the like. But as this case now stands, the judgment can only be sustained on the ground that Adams' defense of usury is *res adjudicata.* The referee in this case finds the fact of usury, only as it is adjudged. Adams, therefore, has no right to any further relief in equity, because he does not need it. There remains for him no subject of equitable jurisdiction.

IV. It was claimed that the action could be sustained, because Adams had warranted the title to the mortgaged premises, and if the mortgage should be foreclosed, he was in peril of being held responsible on his covenant of warranty. 1. In this view, Adams' action rests, not on the usurious contract, but on a new contract with his grantee, Samuel Jackson, on the 22d of December, 1859, by which, in consideration of $100, he conveyed away the mortgaged premises, and covenanted to warrant and defend the same against all lawful claimants. (*a.*) This grant was, in effect, equivalent to a grant subject to the plaintiff's mortgage. Certainly, the property was worth far more than $100. The referee, in this case, found it worth $1200. This was a distinct waiver of the usury, which cannot be revoked. (*Hartley* v. *Harrison,* 24 *N. Y.* 170.) (*b.*) Besides, Adams, in this view, can have no legal or equitable interest in the subject matter of this action beyond $100, and the interest for six years. The proper decree as to him could only be in an appropriate action to indemnify him against that amount, and no more. (*Baxter* v. *Ryerss,* 13 *Barb.* 267.) (*c.*) Clearly, he ought not to be invested with a virtue to give to the plaintiff Bissell, a stranger to the alleged usurious transactions, the surrender and cancellation of the surplus of the mortgage above $100, and six years' interest. 2. But Adams was, by the law, put to his election, whether to avoid the mortgage for usury, or to waive the usury. The privilege was purely personal. Because the contract was voidable only,

Bissell *v.* Kellogg.

the act of granting away the premises, (especially when the paucity of the consideration is taken into account,) was *per se* an election to waive the usury. Adams certainly waived it in that degree that neither Jackson, nor the subsequent grantee, Bissell, could seek any relief in equity against the mortgage. The law will not sustain a partial waiver in such a transaction. 3. But a conclusive answer to the claim of the plaintiffs, under this point is, that neither the complaint, report of the referee, nor judgment, is founded on Adams' liability on his covenant of warranty. No notice whatever is taken, nor mention made, of such covenant of warranty, in either complaint, report or judgment. 4. No question, therefore, arises in this case as to the present rights of Adams as borrower. It is not even necessary to argue, whether by joining with Bissell in this action, he would not waive them, and place himself on the same footing with the subsequent grantee, Bissell, even though it should be assumed that he has equities peculiar to himself, to be enforced in an appropriate action. The case rests entirely on Bissell's rights as grantee, as if he had sued alone, to clear away the " cloud on his title." Adams is only nominally before the court, without the statement of any equity in his favor. (*Mason* v. *Lord*, 40 *N. Y.* 476, *and note p.* 490. *Schermerhorn* v. *Talman*, 14 *id.* 93. *Post* v. *Bank of Utica*, 7 *Hill*, 391. *Story's Eq. Jur.* § 301.)

*W. F. Cogswell*, for the respondents.

The question for consideration is this: Can Bissell, the subsequent purchaser, avail himself of the question of usury to avoid the mortgage of $2050 in controversy, and has Adams in any way lost his right to make such defense of usury?

I. It is submitted on the part of the respondents, that these questions do not arise legitimately. The basis of the plaintiffs' complaint is the prior adjudidation in the

case of *Kellogg* v. *Adams*. It is not pleading the question of usury anew, or as an original question. The facts constituting the prior litigation are pleaded and proved as showing the identity of the matter adjudicated upon. Any person interested in the estate has the right to avail himself of a prior adjudication affecting the estate, and it is of no consequence what it is based upon—usury or any other matter. The available fact is the judgment rendered, and not the cause of action out of which the judgment grew. In other words, being *res adjudicata*, any person may avail himself of the judgment as being a substantive defense, independent of the matter out of which it orginated. The original facts are merged in the judgment, and from its rendition the judgment becomes the sole representative of those facts. Most clearly is this true of the plaintiff Bissell. He became the purchaser of the property in question November 14, 1866. The judgment in *Kellogg* v. *Adams* was entered March 8, 1861. Bissell, as a purchaser subsequent to the entry of judgment, has a right to avail himself of the effect of the judgment as a judgment, without reference to the facts upon which it was based. It is just what the decisions determined it to be, *res adjudicata*, and cannot be again questioned as a fact, but stands as a record, to be appealed to as a record, concluding parties and their privies. It is so pleaded in this case, and is so found by the referee. Coming to the conclusion he did, there was no question of usury for the referee to find. That was already found by a prior tribunal, and that finding, though based upon usury, having become an adjudication, is just as available to these respondents as though it had been based upon fraud or any other fact. (*Clark* v. *Rowling*, 3 *N. Y.* 216 *to* 220. *Mallory* v. *Leach*, 14 *Abb.* 449, *note*.)

II. If this were not so, it is submitted that these plaintiffs practically stand as defendants. Under the authorities, it cannot be reasonably questioned but that a subse-

quent purchaser, who has not assumed the mortgage, may defend his title against the usurious security. That is just the position of these parties. Had Kellogg filed his bill to foreclose his mortgage, there cannot be a qustion but that the subsequent purchaser might set up the defense of usury. Instead, Kellogg commences a statute foreclosure, and as the only way of becoming impleaded, so to speak, in the proceeding, the bill was filed. Though nominally plaintiffs, they are practically defendants; in that they are resisting the enforcement of a mortgage already adjudged invalid, but, if unresisted, would ripen into an absolute title. Kellogg is the moving party.

III. No court or tribunal has ever questioned the fact that Adams, as borrower, has the right to set up the defense of usury. He is the debtor in the security sought to be enforced. His covenant of warranty is outstanding. He has the same right to defend, and interest in defending, that he would have if present owner. He may avail himself of the defense of usury as an original question, and may also avail himself of the question of a prior adjudication.

IV. Whatever may be the right of Bissell to raise the question of usury, Adams certainly can raise it, and he does not lose his character of borrower by joining with Bissell in this action. His right, as borrower, to raise the question of usury, inheres in the contract, and is given by statute. After the usurious contract becomes completed, the debtor, as against the immediate creditor, cannot estop himself, by act or covenant, short of the instruments being purged of usury. How can it be claimed, therefore, that he waives any right by joining with Bissell. It is absurd to say that such an act would lose his right, where he could not release that right to the lender, by any other process than purging the security of usury. The policy of the statutes is against permitting the debtor to do any act

avoiding his right to raise this defense as against the original lender.

V. It is claimed, therefore, that Bissell, as a subsequent purchaser, has a right to defend his title by pleading usury, and as against every consideration has the right to plead and avail himself of a prior adjudication of this court which will protect his title. That Adams, as borrower, has the right to avail himself of the defense of usury to protect the title he has warranted. That he has not waived that right by any act of his. And that the prior adjudication between Kellogg and Adams is available to him equally as to his co-plaintiff, Bissell.

*By the Court,* TALCOTT, J. This is an action in equity to remove a cloud upon the title to land belonging to the plaintiff Bissell, which cloud consists of a mortgage executed in 1858, by the plaintiff Adams, and alleged to be usurious. One Lampson held a mortgage upon other property of the plaintiff Adams, for the nominal amount of $4000, but in fact executed as an indemnity for indorsements, or liability on the notes of Adams. There was actually but about $3000 due to Lampson on the mortgage when the transaction between the plaintiff Adams and the defendant Kellogg occurred. That transaction was, in substance, as follows: Kellogg agreed to advance the $3000 to Lampson, and take an assignment of the $4000 mortgage, and to advance to Adams the further sum of $1000, and hold the mortgage for the whole $4000, giving time for its payment, upon the condition that Adams should purchase a house and lot in Le Roy, then owned by Kellogg, at the price of $2050, when the same was in fact worth not to exceed $1200. Adams was to secure the payment of the $2050 by his bond accompanied by a mortgage on the property conveyed. The transaction was consummated, and the assignment of the $4000 mortgage, the deed of the house and lot, and the bond and mortgage for $2050,

Bissell *v.* Kellogg.

executed. Adams subsequently and in 1859 conveyed the premises purchased of Kellogg to Samuel Jackson, for the consideration of $100, with the usual covenant of warranty. Jackson conveyed, with similar covenant, to John P. Mitchell, in consideration of $1000, and Mitchell, in 1864, conveyed to the plaintiff Bissell, with a like covenant, and in consideration of $1000. This action is brought to remove the $2050 mortgage as a cloud upon the title. The referee has pronounced the mortgage to be usurious, upon the ground that the point was *res adjudicata.* That question arises upon the following state of facts : Kellogg commenced a foreclosure of the $4000 mortgage in the Supreme Court. Adams and certain of his judgment creditors, and also one Jackson, a mortgagee of the premises, holding a mortgage which had been executed to him by Adams, between the date of the $4000 mortgage and the assignment by Lampson, were defendants in that suit. The defendants Adams, Jackson, the subsequent mortgagee, and the judgment creditors, answered, setting up the transaction between Adams and Kellogg, at the time of the assignment of the $4000 mortgage, and claiming that the transaction was a loan of $4000 by Kellogg to Adams, and. was usurious by reason of the condition requiring Adams to take the house and lot at the over valuation, and claimed this as a defense to the whole mortgage. The cause was tried at a special term, before Justice Grover, who found the facts, and, among others, that the condition of taking the house and lot, at the over valuation, was imposed upon Adams as a condition of the advance by him, but did not, in his original findings, expressly declare the transaction to be usurious, though he declared the $4000 mortgage to be valid in the hands of Kellogg only for the amount due to Lampson at the time of the assignment, and ordered the usual judgment of foreclosure for that sum. The judgment was entered accordingly. That judgment does not purport, on its face, to

adjudge the transaction to be usurious, or the $2050 mortgage to be void. In fact, it makes no allusion to the latter mortgage, or to any of the facts which were connected with the assignment of the $4000 mortgage, but simply adjudges as due upon the same the amount found due by Justice Grover. The judgment was affirmed by the Court of Appeals. This was a device, and the usury was a question of intent, to be found as a fact. And the counsel for the appellant argues that the referee, in this case, was not authorized by the record, in that case, to hold that the question of usury was *res adjudicata*, but should have decided the question of usury upon the parol evidence as to the value of the house and lot, given in this case. It appears from the opinion of the learned referee accompanying the case, that he arrived at the conclusion that the usurious nature of the contract was *res adjudicata*, by inference. He argues, and cites various authorities to show, that though only $3000 was due to Lampson on the $4000 mortgage, yet it was perfectly competent for Adams to agree that it should stand in the hands of Kellogg as a valid security for $4000, on receiving the subsequent advance of $1000, had it not been for the usury. And he concludes that the court must have held the transaction to be usurious; otherwise, Kellogg would have been entitled, in that action, to foreclose the mortgage for the whole $4000.

The authorities cited, however, by the learned referee show, and his own statement of their effect is, that the mortgage was valid for the larger sum only in case no rights of third persons have intervened. The circumstance that Samuel Jackson, one of the defendants in that suit, and who appeared and defended for his own interest, was a *bona fide* mortgagee, intervening between the execution of the mortgage to Lampson and its assignment to Kellogg, seems to have entirely escaped the notice of the referee. The propositions stated by the referee, and the

authorities cited by him, show that, as against Jackson, the $4000 mortgage could only be a valid security for the amount due at the time his rights as subsequent mortgagee accrued.

The counsel for the appellant is doubtless correct in claiming that the fact of *res adjudicata* is not to be made out by inferences, like those which governed the referee. An estoppel requires strict proof. A fact cannot be held to have been adjudicated in a former suit, unless it so expressly appears by the record, or, at least, it is clearly shown by *evidence aliunde,* that it was determined. But the record in this case contains a statement to which the referee has not alluded, and which may have escaped his attention, as well as that of the counsel, but which we think fully authorizes the ruling of the referee, that the usurious nature of the arrangement was *res adjudicata* in the former suit. The case settled in the former suit is embodied in the record which was produced in evidence before the referee, and that expressly states that the agreement, whereby Kellogg agreed to take the mortgage for $4000, and Adams agreed to take the house and lot and give back his bond and mortgage for $2050, was usurious. Where there is a trial by the court, the judge who tried the cause, in settling the case, is required to specify the facts found by him, and his conclusions of law. (*Code,* § 268.) The facts thus specified are conclusive upon the parties in that case, if founded on sufficient evidence, and there is no apparent reason why they are not to be considered as *res adjudicata* for all purposes, the same as though contained in the original findings of the judge. It therefore does appear, by the record of the former recovery, that the question whether the mortgage for $2050 was executed upon a usurious contract, was in issue in that case, and the fact of usury was found by the judge. Kellogg was the plaintiff, and Adams was a party defendant in the former suit. Bissell is privy in estate with

Bissell *v.* Kellogg.

Adams, by subsequent grant. The record of the former recovery, therefore, was admissible in evidence in this case in behalf of both the plaintiffs, as against the defendant, and conclusively established that the mortgage for $2050, which is the subject of this suit, is usurious and void.

The complaint in this case is for the sole purpose of removing the $2050 mortgage as a cloud upon Bissell's title to the land covered by it. The only interest in that question, which is claimed by the plaintiff Adams, grows out of the fact that in case Bissell's title should be cut off by virtue of the mortgage, he, Adams, would be liable for $100, with interest, on the covenant of warranty contained in his deed to Jackson, one of the predecessors in title of Bissell, made in 1859. It is clear that the parties plaintiff have no joint interest in the subject matter of this litigation. Adams is not in a position to institute this suit. He has no title to, or interest in, the land from which the cloud is sought to be removed. The interest in the *question* which he claims, is altogether remote and conjectural. It can only arise in case the land should be sold on the mortgage, and the purchaser on the sale acquire a paramount title. This, either he or Bissell can prevent without a resort to this action. If a suit in court is commenced to foreclose the mortgage, Bissell can defend against it, and if he neglects to do so, he must give Adams notice of the suit and permit him to defend it; otherwise a judgment establishing the mortgage would not conclude Adams, or prevent him from showing, in an action on his covenant of warranty, that the mortgage was usurious, and so the title acquired under it not in fact a paramount title. If the mortgage is foreclosed by advertisement, it will not operate to convey a good title, except to a bona fide purchaser at the advertised sale. And this can be prevented by either Adams or Bissell, by giving notice of the usurious character of the mortgage at the time of the sale. In the case of *Hyland* v. *Stafford*, (10 *Barb.* 558,) it was held

that it was only a bona fide purchaser at the sale, pursuant to the statute, who was protected against the allegation of usury in the mortgage, and not any subsequent grantee of one not a bona fide purchaser. And the court, by Allen, J., in that case says : "If this view is right, then the mortgagor can protect himself and have the full benefit of the act to prevent usury, by attending at the public sale and giving notice of the usurious character of the mortgage, and thus preventing the possibility of a sale to a purchaser in good faith."

It is, moreover, at least doubtful if any recovery can be had against Adams on the covenant of warranty, even if the property should be struck off to a bona fide purchaser at the sale. The mortgage, being void, is not a paramount title, and of itself would not operate to convey a good title, but could so operate only by virtue of the sale to a bona fide purchaser, which Bissell, as before stated, has the power to prevent, and which, if permitted, would be through his own neglect, he knowing all the facts. (*Kelly* v. *The Dutch Church, &c.*, 2 *Hill*, 105. *Rindskopf* v. *The Farmers' Loan and Trust Co.*, 58 *Barb.* 36.)

We have been referred to no authority, and have discovered none, giving countenance to the idea that a party can maintain a suit to remove a cloud upon the title to land in which he has no interest, and upon the sole ground that he has warranted the title. And we do not think such an action can be maintained. Equity interferes to remove clouds upon title because they embarrass the owner of the property clouded, and tend to impede his free sale and disposition of it. (*Byne* v. *Vivian*, 5 *Vesey*, 604. *Ward* v. *Dewey*, 16 *N. Y.* 519, 531.) A cloud upon title is a title, or incumbrance, apparently valid, but in fact invalid. A party whose only interest is that he has given a covenant of warranty, cannot be embarrassed or inconvenienced by the existence of the cloud. He can only be called upon on his covenant of warranty where

there has been an eviction under valid and paramount title. As before remarked, the sole object of this suit, as appears by the complaint, is to remove the mortgage as a cloud upon title, no relief being sought against the bond of Adams ; and the judgment extends only to the mortgage. But if the suit had also been to have the bond of Adams canceled, he could not, upon the facts, have maintained the action. The complaint in such an action would be what was known as a bill *quia timet*. Such a bill is only entertained in equity where the complainant is endangered by the outstanding obligation sought to be canceled. Where it appears upon the face of the obligation, or by evidence not liable to be lost, that the complainant cannot in judgment of law be endangered, the suit cannot be maintained. Here the plaintiffs allege, and prove, that the usurious character of this mortgage was determined in and appears by the record of the former suit. This is evidence of record. In such case there is no necessity for a bill *quia timet*, to entertain which is discretionary with a court of equity. This principle is applied to obligations void for usury, notwithstanding the imperative provisions of the act of 1837. In the case of *Schermerhorn* v. *Talman*, (14 *N. Y.* 93,) there was an outstanding bond, and the prayer of the bill was, among other things, for cancellation of the bond. But the court held that the complainant was not entitled to maintain the suit under the act of 1837, for the cancellation of the bond, as it appeared he had been discharged in bankruptcy from his obligation to pay it—the proceedings in bankruptcy being matter of record. The usury act of 1837 was not designed to require a court of equity to entertain a suit which, according to its settled practice, it would not have entertained before that act, but only to relieve the borrower, under a usurious contract, from the obligation to repay the money actually borrowed, in cases where a resort to a court of

Bissell *v.* Kellogg.

equity was *necessary,* either for discovery or relief. (*Perrine* v. *Striker*, 7 *Paige*, 598. *Morse* v. *Hovey*, 9 *id.* 197.)

The existence of the record evidence that the mortgage in question is void for usury, would probably be an obstacle to the maintenance of the suit by either plaintiff to remove the cloud on the title, except for the circumstance that the purchaser on a statute foreclosure would require a title presumptively good, and which could only be defeated by parol evidence impeaching the good faith of the purchaser, by showing notice to the purchaser, of the invalidity of the mortgage. The complaint, therefore, as to the plaintiff Adams, should have been dismissed for want of a cause of action in his behalf.

As to the plaintiff Bissell, relief should be granted, on terms. The rule of courts of equity prior to the statute of 1837, requiring the complainant who sought relief in that court against a usurious contract, obligation or security, to repay the money actually loaned, with interest, as a condition of granting the relief, was clear and undoubted. (*Story's Eq. Jur.* § 301.) The statute of 1837 abrogated this rule only in behalf of the *borrower;* and under that statute it is well settled that the rule is not abrogated by it as to the grantee of the borrower; but that when a grantee, as such, commences a suit for relief, the rule requiring him to do equity, as a condition of relief, still applies. (*Post* v. *Bank of Utica*, 7 *Hill*, 391. *Schermerhorn* v. *Talman*, 14 *N. Y.* 93.)

The judgment, therefore, as to Bissell, should be modified so as to give him the relief he seeks against the mortgage, upon terms of doing equity. This can be nothing less, certainly, than requiring him to pay the value of the house and lot which was the consideration of the mortgage, with interest from the date of the mortgage, to which the use of the property is presumptively equivalent. We understand it to be conceded that no payment of principal and interest has ever been made on the $2050 mort-

gage, so that the taking an account is unnecessary. The actual value of the house and lot is not determined by the referee in this case, but it is expressly found in the former suit to have been $1000, and no more, at the time of the conveyance. That finding is conclusive upon the parties here, where the same question is again in issue. There was no offer in this case before suit, or in the complaint, to do equity, according to the practice of the court. The want of such offer would formerly have occasioned the bill to be dismissed. The doctrine of the more recent cases, however, is that the omission to make such offer goes only to the question of costs. The defendant, to secure his equitable rights under the rule requiring the plaintiff to do equity, was compelled to defend the suit, and to appeal, and is entitled to his costs.

It was understood to be claimed, on the argument, by the counsel for the respondents, that the judgment in the former suit operated as a judgment to discharge the mortgage in question ; and that this suit is an action to have the benefit of that judgment as a judgment. If that were so, there would be no ground for maintaining this action. It would be an anomalous and wholly unnecessary proceeding. If a mortgage is declared void and discharged by the decree of a competent court, the power of sale is extinguished, and no title could be acquired under it, and such decree itself removes the cloud. But, as we have seen, the position of the counsel is erroneous in fact. The judgment in the former action does not even declare the transaction to be usurious, much less does it purport to discharge this mortgage. The record of the former suit is simply available as evidence of the usurious character of the transaction out of which this mortgage grows, because that was put in issue, and was determined as matter of fact, in the suit on the other mortgage.

The judgment in this case must therefore be modified, in accordance with the views herein expressed, by dis-

Great Western Insurance Company v. Thayer.

missing the complaint as to the plaintiff Adams. And, as to Bissell, providing that upon his paying, or causing to be paid, to the defendant Kellogg, or into court for his use, by depositing the same with the clerk of the county of Genesee, subject to Kellogg's order, within sixty days after the service of a copy of the judgment as thus modified, the sum of $1000, with interest on the same from the 14th day of August, 1858, to the date of such payment, then the mortgage for $2050, described in the complaint, is declared usurious and void, and ordered to be canceled of record. But in case of the failure of said Bissell, or his representatives in the premises, to make such payment within the time aforesaid, then the complaint is ordered to be dismissed as against the plaintiff Bissell. And further ordering that whether such payment be made or not, the defendant recover of the plaintiffs the costs of the action; costs of the appeal to be recovered by neither party as against the other.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]