SALLY AUSTIN *v.* WILLIAM C. HARRINGTON.

[IN CHANCERY.]

*Usury.*

The defendant borrowed of the oratrix, through her general agent, a sum of money for which he gave his note; and on the same occasion, but without the personal knowledge of the oratrix, he purchased a span of horses belonging to the agent for $ 400,00, and gave his note to the agent for that sum and subsequently paid it. The horses were not worth over $ 225,00. The defendant made the purchase and *agreed to give* $ 175,00 *more than the horses were worth for the purpose of procuring the loan.* *Held* that the $ 175,00 thus received by the agent was usury, and should be deducted in ascertaining the amount due on the oratrix's note.

BILL OF FORECLOSURE OF MORTGAGE. The master, to whom it was referred to ascertain and report the amount due, reported

the following facts. On the 5th of March, 1847, the oratrix loaned to the defendant the sum of $7,000.00, for which the defendant gave his note, payable to the oratrix, and secured by mortgage. Gustavus A. Austin, the son of the oratrix, was her general agent to transact her business, and the contract for said loan was made by and between the defendant and the said Gustavus A, as the agent of the oratrix, at the house of the oratrix in Orwell; and it did not appear that the oratrix was consulted by either the said Gustavus or the defendant, concerning said loan, or that she was informed by the said Gustavus that he was making, or had contracted to make said loan in her behalf.

On the occasion of said contract for said loan being made, and at the same time, the said Gustavus sold to the defendant a pair of bay horses at the price of four hundred dollars, for which horses, the defendant gave his note to the said Gustavus for four hundred dollars, payable on demand, with interest. The horses were the property of Gustavus, and the money loaned was the property of the oratrix; but it did not appear that the oratrix had any knowledge of the sale of said horses, by the said Gustavus, to the defendant. This note for $400,00 was subsequently paid in full to the said Gustavus. The horses, so sold to the defendant by the said Gustavus, were not worth over two hundred and twenty-five dollars.

The defendants insisted that the sale of the horses by the said Gustavus to the defendant for a price so much exceeding their value, was a cover for usurious interest on said loan; and that, although the horses were the property of the said Gustavus, and the money loaned was the property of the oratrix, the security taken by the oratrix was tainted with the usury; and, on this point, the master found that, as the loan was made to, and the horses were purchased by the defendant at the same time, and on the same occasion, and as the defendant paid $175,00 more for the horses than they were worth; he made the purchase of the horses at the price of $400,00 for the purpose of procuring said loan, though nothing was *said* that the purchase of the horses should be a condition of the loan; and that if the court were of the opinion that such purchase under this state of facts, made the loan usurious, then the $175,00 paid for the horses more than they were worth,

should be deducted from the $ 7,000,00 for which the defendant gave his note.

The master reported the amount due both on the basis of deducting, and also of not deducting the sum of $ 175,00 from the original loan of $ 7,000 ; and the court of chancery made their decree for the payment only of the sum reported on the basis of deducting said sum of $ 175,00, and from their decree the oratrix appealed.

There were other subsequent transactions between the parties in reference to the above, and an additional loan, which were reported upon by the master, but upon which no question was decided by the supreme court, and which it is therefore unnecessary to detail.

*Peck & Harvey* for the oratrix.

*O. Russell* for the defendant.

The opinion of the court was delivered by

ISHAM, J.   The question in this case arises upon the report of the master, in stating the balance due on the mortgage debt, on which this bill of foreclosure is brought. It is claimed that the sum of $ 175,00 should be deducted from the debt for which this mortgage was given, as having been usuriously taken at the time the loan was made. There is no doubt that such should be the result, if, in point of fact, the transaction was usurious, and that amount was paid under those circumstances ; for it is optional with the party paying the money, to treat it as paid on the debt, or as a payment having no connection with the legal demand, and bring his action to recover it back ; *Nichols* v. *Bellows*, 22 Vt. 581. The loan in this case was made by the oratrix through the instrumentality or agency of her son, Gustavus A. Austin. It was for the purpose of procuring the loan, as the fact is stated by the master, that the horses were purchased of Mr. Austin at the sum of $ 400, being $ 175,00 more than their actual value in money ; and for which a note was given to him ; and another note for the money loaned was given to the oratrix. If, instead of giving separate notes, the whole amount had been included in one note, payable either to Mr. Austin or the oratrix, no one would doubt but that,

under such circumstances, the transaction would be usurious, and that the sum paid, over the true value of the horses, should be deducted from the note. The same principle would apply if each of these notes had been made payable to the same person. The statute against usury is not avoided by taking separate securities nor by making those securities payable to different persons who were parties to, and cognizant of the usurious transaction. The contract being entire, and that an unlawful one, all the securities are equally affected; *White* v. *Wright* 3 B. & Cress. 273; *Bridge* v. *Hubbard,* 15 Mass. 96; *Nelson* v. *Cooley,* 20 Vt. 201. The general principle is also well settled that, where goods or property is taken by the borrower in lieu of money, and for the purpose of affecting the loan, the transaction is usurious, unless the property is not only fairly worth the sum at which they were estimated, but would easily be made available in the borrower's hands for raising that sum by re-sale; Byles on Bills, 249; *Davis* v. *Hardacre,* 2 Camp. 375; *Bank of U. States* v. *Owen,* 2 Pet. 527. Though nothing was said that the purchase of the horses was a condition upon which the loan was obtained; yet, the fact is found by the master that the purchase was made at the price of $ 400,00 *for the purpose of procuring the loan.* We are to understand from this, that the loan could not be procured except that purchase was made; and, as the sum paid much exceeded the actual value of the horses, the case falls within the general principles which render the transaction usurious.

It is insisted, however, that the note given to the oratrix, which was only for the money actually loaned, is unaffected by that sale, and that she is not bound by any act of Gustavus A. Austin in that negotiation, which was not expressly authorized by her, and of which she, at the time, had no knowledge. In the case of *Baxter, Admr.* v. *Buck,* 10 Vt. 548, it was held that, "where an agent, "authorized to settle a debt due the estate, takes a note to the "administrator for the principal sum due, and one to himself for "the usurious interest, the first note is not void, unless the admin-"istrator knew of the usury and assented to it." That was a case of a limited and special agency, in which the employment was only for that single transaction, and where the principal was not bound by any act of the agent not expressly authorized by him. In such

case, it is incumbent on the party dealing with the agent, to ascertain the extent of his authority. We have no occasion to question the soundness of that decision, as the case under consideration is not one of that character. It is expressly stated by the master, in this case, that Gustavus A. Austin was not only the agent of the oratrix in making this loan, but that he was *her general agent in the transaction of her business.* The nearness of their relationship, and the circumstances, that the loan was made without consultation with the oratrix and that she permitted him to use or loan her money in that manner, as well as the subsequent negotiations in relation to it in changing the securities, and increasing its amount, shows the general character of his agency, and the trust she placed in him. Under such circumstances, this is not a case in which it can be said that Mrs. Austin is not bound by his contract, or in which she can claim exemption from the legal consequences of his acts because she had not actual knowledge of them at the time, for he was acting within the general scope of his business which she had entrusted to him. In such case she is bound by his acts, though done without her knowledge, and contrary even to her instructions. The authority of a general agent cannot be limited by any private instructions, unless they were known to the person dealing with him. Thus in *Lobdell* v. *Baker*, 1 Met. 193, it was held that, a principal was bound by the representations of his general agent, although they were made contrary to the principal's express instructions, unless such instructions were known to the purchaser. But the rule is otherwise, in case of particular and special agents, Wild J. observing, that "this seems to be a reasonable rule, which is founded on public policy, and is well supported by the authorities;" Story on Agency 116, notes 122; Smiths Mer. Law 161; 1 Amer. Lead, Cases 550, 553; *Com. Bank* v. *Norton*, 1 Hill 502; *Davison* v. *Robertson*, 3 Dow. 219, 229.

We must, therefore, regard the contract for the loan of that money as binding upon the oratrix; as much so, as if it were made with her knowledge; and in that light, that sum should be deducted from this note, as the other has been paid. The oratrix has now knowledge of the particulars of that contract; still, there is no repudiation of it, nor any disaffirmance of the act of her agent. She claims the benefit of the contract, and is now seeking to

enforce payment of the note by foreclosing the security given for it. The contract, as made by her agent, is thereby adopted and assented to; and she is, and should be subject to all the legal consequences resulting from it. In deducting that amount, no injustice is done to her, but manifest justice is done to the defendant. That $400,00 note has been paid to her agent, and with it that usurious interest, so that in the decree she has obtained in this case, and in the money paid to her agent, she will receive the whole amount loaned, and the legal interest upon it. That is all which the law will permit her to recover, and all that in equity she ought to receive. It is a common principle that no artifice, devise, or shift shall evade the statute against usury. Lord Mansfield has observed that, it is not in the wit of man to devise it; *Floyer* v. *Edwards*, Cowp. 114. There is no propriety, therefore, in saying that the scheme adopted on this occasion, which is so readily seen, and so easily effected, shall avoid the statute, and effectually defeat its provisions. By the decree of the chancellor, the amount paid over the actual value of the horses, as found by the master, was deducted from this note, and, we think, that the decree should be affirmed.