A. D. STEPHENS and Others v. LUDVIG OLSON.[1]

SAME v. EVEN O. OLSTAD.

Oct. 30, 1895.

Nos. 9422–9423—(61–62).

**Promissory Note—Usury Exacted by Agent of Payee.**

A partnership engaged in a general banking business, including the making of loans, employed an agent as cashier, to whom they intrusted the entire and exclusive management of the business. In making a loan for his principals, the cashier exacted from the borrower, for the use of the money, an amount in excess of 10 per cent. interest, and included such excess in the note, as part of the principal. In an action by the principals on the note, *held*, that the note was void, notwithstanding that in exacting usury the cashier may have disobeyed their instructions.

**Same—"Innocent Purchaser" within G. S. 1894, §. 2214.**

To constitute an "innocent purchaser" of negotiable paper, within the meaning of G. S. 1894, § 2214, a person must have acquired the paper in the "due course of business," according to the law merchant. Following Fredin v. Richards, 61 Minn. 490.

**Same—Transfer by Taking in New Partners.**

The members of an existing firm formed a partnership with other parties, and all the assets (including some negotiable notes, not yet due) of the original partnership were transferred to the new firm. *Held*, that the new firm were not purchasers of the notes in the due course of business, within the law merchant.

Appeals by defendant in each of the above cases from an order of the district court for Polk county, Ives, J., denying a motion for a new trial. Reversed.

*Ole J. Vaule*, for appellants.

*H. Steenerson*, for respondents.

MITCHELL, J. All the facts, and most of the assignments of error, in these two cases, being the same, they can be conveniently disposed of together. Each action was on a negotiable promissory note executed by the defendant, payable to the order of the plain-

[1] Reported in 64 N. W. 898.

tiffs, Stephens and Cromb, by their firm name, the "Bank of Fosston." In each case the defense was usury.

The undisputed evidence was that the two plaintiffs named were partners under the firm name referred to, and, as such, were conducting a general banking business at Fosston; receiving deposits, paying out money, and making loans. They employed one Haslund as cashier, to whom they intrusted the entire and exclusive charge and management of the whole business. According to defendant's testimony, which was not contradicted (Haslund being dead), on two occasions he applied for and secured a loan of money from the bank, through the cashier; in each case the cashier charged him for the use of the money an amount in excess of 10 per cent.,—such excess, in each instance, being included in the note, as part of the principal. Both notes draw 10 per cent. interest. These are the notes sued on. The two plaintiffs named testified that they never gave the cashier authority to charge more than 10 per cent. on loans; that they expressly instructed him not to do so, and that they never knew or heard that he had done so until after the notes fell due. The undisputed evidence also was that before the notes fell due a new partnership was formed, or, rather, a change was made in the members of the partnership, by the two original members taking the other four plaintiffs into the firm; the six constituting a new partnership, to whom all the assets of the old firm, including the notes in suit, were transferred at their face. None of these four new members knew that the notes were usurious.

1. If the testimony of the defendant was true, both notes were usurious and void. Stephens and Cromb had intrusted the entire management of the business to the cashier, as their general agent. In exacting the "bonus," the cashier did not assume to do so on his own account, but for his principals, and in the line of his employment, and included the bonus in the amount of the notes taken in the name of his principals. And it is these very notes which the plaintiffs are now seeking to enforce. Under such a state of facts, the notes were usurious in the hands of the principals, even if the cashier, in exacting usury, disobeyed their positive instructions. They cannot be permitted to avail themselves of the benefits of contracts made in their behalf by the agent, and at the

same time repudiate his acts in part, as being unauthorized. The case of Cromb v. Olson, 61 Minn. 534, 63 N. W. 108, between these same parties, fully covers this case.

2. The plaintiffs are not protected, as innocent purchasers for value, before maturity, under the statute. G. S. 1894, § 2214. In Fredin v. Richards, 61 Minn. 490, 63 N. W. 1031, we construed the term "innocent purchaser," in this statute, as meaning a bona fide indorsee or bearer, within the law merchant; in other words, that, to come within the protection of the statute, a party must have acquired the paper "in the due course of business," or, as sometimes expressed, "according to the usages and customs of commercial transactions in commercial paper." This is adhered to so strictly that it is uniformly held that, if the paper is payable to order, it must be acquired by the indorsement of the payee. It ought hardly to require argument to show that a change in the membership of a partnership, by new members being taken into the firm, and purchasing an interest in the assets of the original firm, does not constitute a purchase of commercial paper according to the usual or due course of commercial transactions, within the meaning of the law merchant. The learned trial judge seems to have fallen into the error of treating a partnership as a legal entity distinct from the individuals composing it, instead of a mere association of individuals. The rulings of the trial court were in so many respects in conflict with these propositions that it is unnecessary to make specifications.

Usually, we would, on this state of the evidence, reverse, and order judgments for the defendant; but in view of the fact that such judgments would work a forfeiture of the entire debts, and the further fact that the other party to the transaction (the cashier) is dead, and hence the testimony of the defendant cannot be directly contradicted, and therefore may not be accepted by the jury as conclusive, we will merely reverse the orders appealed from, and direct new trials. So ordered. .